# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DANIELLE LEWIS,                 )
                                  )

               Plaintiff,           )
                                  )

v.                                )        CIV-15-1052-R
                                  )

MIDLAND CREDIT MANAGEMENT,   )
ET AL.,                         )
                                  )

             Defendants.        )

## ORDER

Defendant Midland Credit Management ("Midland") has filed a Motion for Summary Judgment (Doc. No. 56), to which Plaintiff has filed a Response. Defendant filed a Reply in support of its position. Having considered the parties' submissions, the Court finds as follows.

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not negate a

non-moving party's claim; rather, the moving party need only show a lack of evidence supporting a crucial element of a non-moving party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998)(citing *Celotex*, 477 U.S. at 325.

If the movant carries the burden of establishing an absence of genuine issues of material fact, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

In February 2012 Defendant Midland purchased certain accounts with outstanding balances from T-Mobile Central LLC. The accounts included one numbered 509422202, which bore the name "Danielle Lewis" and listed a billing address of 1220 N.E. 47th Street, Oklahoma City, Oklahoma. The balance transferred to Midland was $760.78. Plaintiff confirms she once had T-Mobile account, with a social security that matches the one affiliated with account 509422202, and that she once resided at the billing address. Additionally, Plaintiff's prior cellular number was the same as the one listed on the T-Mobile Customer Account Information sheet. Plaintiff admitted that a balance of $761 on the account was possible. Plaintiff, contends, however, that Defendant Midland has violated the

Fair Credit Report Act ("FCRA") and the Fair Debt Collection Practice Act ("FDCPA") with regard to the account because it failed to follow the applicable laws and procedures.

In support of its request for summary judgment Defendant Midland contends it mailed settlement and confirmation of debt letters to Plaintiff in 2012 and 2013. Plaintiff denies that she received certain of the letters and cannot recall whether she received others. However, it is undisputed that on July 8, 2015, Midland received a letter from Plaintiff requesting that it validate the alleged debt, the letter indicating that it was being sent "in response to a listing on [her] credit report." Defendant Ex. 5. Defendant responded by letter dated July 31, 2015, indictaing the original creditor and account number as well as the balance due.[1] In August 2015 Plaintiff authored another letter to Midland stating that the July 31, 2015 response did not prove the debt was hers. "Perhaps I have been the victim of identity theft or fraud. I can certainly create similar documents on my computer, send them to your company and claim that you owe me money. Would that prove anything?" Defendant Ex. 7. Plaintiff denies receipt of Defendant's subsequent letters regarding the debt, wherein it stated that she did not provide sufficient information to investigate her dispute pursuant to the Fair Credit Reporting Act.

In July 2015 Defendant also received electronic requests from the Consumer Reporting Agency (CRA) Defendants, Experian, Equifax, and Trans Union, requesting that Midland verify the accuracy of the information it had furnished. Plaintiff contends that

---

[1] Defendant contends it sent a letter to Plaintiff on July 22, 2015, but it did not include a copy of such letter in its exhibits.

Defendant Midland failed to conduct the required investigation under the Fair Credit Reporting Act. She further contends that Defendant violated the Fair Debt Collection Practices Act, 18 U.S.C. § 1692g(b) by "failing to cease collection activity by not removing the trade line from [her] credit report." Complaint, ¶ 120. Defendant Midland seeks summary judgment on both claims.

In 1970 Congress enacted the Fair Credit Reporting Act ("FCRA") to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Certain provisions of the 1996 amendments require that furnishers of information to consumer reporting agencies (CRA), to include Defendant Midland herein, provide accurate and complete information regarding a consumer's credit. When a furnisher receives notice of a consumer dispute from a CRA, the furnisher is obligated to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir.2013)(internal quotation marks omitted). Plaintiff bears the burden of establishing that the information Midland provided to the CRAs was inaccurate or incomplete. *Schueller v. Wells Fargo & Co.*, 559 F.App'x. 733, 736-37 (10th Cir.), *cert denied*, 135 S.Ct. 275, 190 L.Ed. 2d 203 (2014).

4

In response to the motion for summary judgment and its statement of undisputed facts,

Plaintiffs generally presents three responses:

> (1) Defendant did not explain to Plaintiff that the account it was attempting to collect on was related to Plaintiff's T-Mobile account or that it was acting on behalf of an account with T-Mobile (Plaintiff's Response, ¶¶ 1, 6, 15);
> (2) Defendant never provided Plaintiff any correspondence (Plaintiff's Response ¶¶ 2, 3, 4, 5, 8, 9, 10); and
> (3) Defendant did not report accurate results (Plaintiff's Response, ¶¶ 9, 11, 12, 13).

In support of her contention that Defendant did not report accurate results Plaintiff cites to

the following testimony from her deposition.

> Q:    And you testified earlier that Midland did not report the results of their investigation to you, right?
> A:    They did not report accurate results. I believe with them, it just became like an updated account.
>
> ***
>
> Q:    And so you don't know what the result of the investigation they reported to the consumer reporting agencies, do you?
> A:    I don't. If there was actually an investigation done they would have found out that it wasn't a valid account.

Deposition of Lewis, pp. 176, 177.

The Court finds that Plaintiff has failed to establish that any inaccuracies exist or that

genuine issues of material fact exist in that regard. Plaintiff admitted that she had an account

with T-Mobile, that the account Midland had purchased was affiliated with her Social

Security number and that she had resided at the address affiliated with the account. When

asked if she knew for a fact that the information on the Midland account was inaccurate,

5

Plaintiff testified hat she could not confirm "what it is they are saying that I owe." Deposition

of Lewis, p. 30.

> Q: Okay. So you don't know whether or not this information reported by Midland Funding is accurate?
> A: No. No, not for sure. I haven't seen any actual paperwork yet to this day.
> Q: It could be accurate; though; is that correct?
> A: Possibility. Yeah, possibility.

*Id.* at p. 73. She admitted opening a T-Mobile account and had no recollection of the highest

balance. Furthermore, although the account was in Plaintiff's name, her sister used one of

the lines and was to have paid the bills.

> Q: What is the last balance that you recall on your T-Mobile account?
> A: I don't know, because it was a cell phone I got for my sister, so she handled the account.
> Q: Was it possible that it was $761 at some point?
> A: Maybe.

*Id.* at p. 133-34. She further testified:

> [L]et me make this clear. It's not in owing T-Mobile. The dispute is in verifying that it is actually my account that I had in the past and that I actually owed them the 700 some odd that they are referring to that I owe. That's what this dispute is about.
> I'm not saying that I don't owe this much or I don't owe - - that is not my account. My thing is that I don't know for sure. I do remember having something in the past, but that - - that's anyone.

*Id.* at p. 161.

The FCRA is designed to prevent the "compilation and dissemination of inaccurate

credit information," so a plaintiff cannot prevail on a claim against a credit furnisher under

15 U.S.C. § 1681s-2(b) without "a showing of actual inaccuracy." *Chiang v. Verizon New*

*England, Inc.*, 595 F.3d 26, 38 (1ˢᵗ Cir. 2010). Plaintiff's unsupported deposition testimony, which at best indicates her suspicion that the information regarding the T-Mobile account might contain inaccuracies, is insufficient to support her burden, and accordingly, she has failed to make a showing that Defendant reported inaccurate information to the CRAs. Thus, Defendant Midland is entitled to summary judgment on Plaintiff's FCRA claim.[2]

Defendant also seeks summary judgment on Plaintiff's FDCPA claim, which she pursues pursuant to 15 U.S.C. § 1681g. In her Complaint, Plaintiff alleges that Midland violated the FDCPA by "failing to cease collection activity by not removing the trade line from her credit report." Midland contends summary judgment is appropriate because Plaintiff did not request validation from Midland within thirty days of its initial contact, a letter sent in March 2012. As such, Defendant contends that Plaintiff's July 2015 request for validation was untimely. Defendant next contends that it provided validation in April 2012, and again in July and September, 2015. Defendant further argues that there is no requirement that the trade line be removed from her credit report, and that Midland informed the CRAs that Plaintiff disputed the debt. Finally, Defendant notes that it requested the CRAs delete the trade line in October 2015.

Plaintiff responds by arguing that she "disputed twice and no documentation in respect to the consumer dispute was ever given to Plaintiff; some documents are required of MCM." Response, p. 26. The only other argument in this portion of the brief addressing the particular

---

[2] The fact that Defendant requested that the trade line be deleted in October 2015 does not itself support Plaintiff's contention that Defendant reported inaccurate information to the CRAs.

facts of this case is that "it is clear that Defendant did not cease with its collection efforts once Plaintiff disputed the debt." *Id.* at p. 27. Plaintiff, however, does not elaborate on the claim set forth in the Complaint that Defendant failed to cease collection activities by not removing the trade line from her credit reports. Defendant contends in its reply that Plaintiff failed to cite authority that mandated removal of the trade line.

The Court has reviewed the case cited by Plaintiff, *Purnell v. Arrow Financial Services, LLC.*, 303 Fed.Appx. 297 (6ᵗʰ Cir. 2008), and the FTC Opinion Letter cited therein, and disagrees with Plaintiff's perspective on the outcome of this case based on *Purnell*.[3] The issue in *Purnell* involved what the court characterized as "indirect" collection efforts. *Id.* at 299. That is, there were no direct efforts by the debt collector to recover from the consumer during the year prior to the filing of the lawsuit, and the Plaintiff argued that the reporting of the debt to the credit reporting agency was a collection effort that violated § 1692g(b). The

---

[3] The Court notes that Plaintiff pled a single claim under the FDCPA, the claim set forth above, which implicates continued collection efforts in violation of 15 U.S.C. § 1692g(b) after a consumer submits a request for verification. The Court therefore, will not consider any other claims under the FDCPA that it could conceive based on the parties' submissions.

The Court also notes that although Defendant contends summary judgment is appropriate because it complied with 15 U.S.C. § 1692g(a) in 2012, when it made an initial communication and subsequent validation of the debt, Defendant's evidence is insufficient to support its burden. First, Plaintiff denies receipt of any letter in 2012 or 2013 and Defendant presents no evidence regarding how mailings were handled during that time, whether returned mail was tracked or any of the other factors discussed in *Mahon v. Credit Bureau of Placer County Inc.*, 171 F3d 1197, 1201 (9ᵗʰ Cir. 1999), cited by Defendant, so as to support a rebuttable presumption that Plaintiff received Defendant's "initial communication with a consumer in connection with the collection of any debt" prior to 2015. Additionally, Defendant has not provided the Court with a copy of the March 9, 2012 letter so that it may assess whether it comports with the requirements of § 1692g(a). The same holds true with regard to the averment by Kimberly Larsen that on April 19, 2012 a confirmation of debt letter was sent to Plaintiff verifying the T-Mobile Account debt. There is no information provided regarding the process of mailing or tracking returned mail, no copy is provided so that the Court may assess whether Plaintiff was informed of her right to dispute the validity of the debt and the general averments set forth in the affidavit are insufficient to support summary judgment on this basis.

debt was mostly reported to the agencies as undisputed for the period between September 1, 2004 and the plaintiff's September 1, 2005 filing.

> Specifically, Arrow reported the debt on a monthly automated basis before and after September 1, 2004. Arrow had been reporting the debt as "disputed," but admitted that the debt began being reported without the "dispute marker" in June 2004. That continued to be the case until July 2005, when, due to the age of the debt, Arrow instructed Equifax to delete the account from its records. Despite this instruction, and in response to correspondence from the plaintiff, Equifax sent a Consumer Debt Verification (CDV) form to Arrow. Arrow responded in October 2005 by confirming the debt to Equifax, again without noting that the debt was disputed. Defendant maintained that the "dispute marker" was inadvertently dropped from plaintiff's account in June 2004, during the conversion of defendant's 22 million accounts to a new credit reporting format.

*Id.* at 299. The court concluded the plaintiff's claims under § 1692g(b) were improperly dismissed as time-barred and rejected the debt collector's argument that the claims were futile, quoting a 1997 FTC Opinion Letter.

> Once validation is sent to the consumer, § 1692g(b) is no longer an impediment to collection activities. The FTC's Opinion Letter touches upon the intersection of these provisions, suggesting that although reporting a disputed debt without first validating the debt violated § 1692g(b), "if a dispute is received after a debt has been reported to a consumer reporting agency, the debt collector is obligated by Section 1692e(8) to inform the consumer reporting agency of the dispute."

*Id.* at 304. The Sixth Circuit rejected the defendant's argument that the plaintiff could not prevail on the § 1692g(b) claims "because it would be irreconcilable for a court to find a debt collector violated § 1692(b) for reporting a disputed debt, when § 1692e(8) authorizes a debt collector to report an account as disputed. This misstates the § 1692g(b) claims, which allege that defendant reported the debt without first providing the requested validation." *Id.* at *6.

Here, the CRAs had been furnished the debt information prior to Plaintiff's request for validation, as evidenced by her letter wherein she stated that she became aware of the debt as a result of reviewing her credit reports. The Court does not read the FTC Opinion Letter or any judicial authority cited by the parties as requiring that a trade line must be removed rather than the dispute noted if the request for validation under 1692g(b) is received after the item has been furnished to a CRA. Furthermore, there is no dispute that once Plaintiff expressed her dispute to Defendant, which she contends she did as a result of noticing the Midland trade line on her credit report, that Defendant thereafter, not later than July 31, 2015, reported the disputed status of the debt to the credit reporting agencies. This is unlike the situation in *Purnell* where the furnisher requested the items removed but continued to verify the existence of the debt without noting the dispute. As such, this case is distinguishable from *Purnell*, where the disputed status was not identified for most of the relevant time period. Accordingly, with regard to Plaintiff's FDCPA claim against Defendant Midland, the Court finds there are no genuine issues of material fact with regard to Plaintiff's contention that Defendant violated the Act by failing to remove the trade line from her credit report in 2015. Accordingly, Defendant Midland is entitled to summary judgment on this claim as well.

For the reasons set forth herein, Defendant Midland's Motion for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED this 12th day of September, 2016.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE